# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**ELIZABETH MARTIN**                                                                             **PLAINTIFF**

**v.**                                                   **CAUSE NO. 3:20-cv-460-CWR-LGI**

**PATRICIA MARSHALL**                                                          **DEFENDANT**

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN INJUNCTION

COMES NOW, Patricia Marshall and files this her memorandum in opposition to the Plaintiff's motion for an injunction [*ECF Doc #52*] and would state to wit:

### BACKGROUND

The Plaintiff's memorandum in support of a preliminary injunction is confusing. The Plaintiff spends five pages copying and pasting her complaint. The Plaintiff then gives the standard of review for a summary judgment. It is not until page nine of her memorandum that the Plaintiff finally makes her argument, but it is not for summary judgment. The Plaintiff begins her argument by referencing the Mississippi Rules of Civil Procedure—despite that this case is in federal court—and then argues that the preliminary injunction complies with Rule 8 of the Mississippi Rules of Civil Procedure.

The Plaintiff then attempts to argue why an injunction is warranted. In doing so, the Plaintiff cites an incorrect standard for a preliminary injunction within the Fifth Circuit. Even with the incorrect standard, the Plaintiff convolutes the two elements she thinks need to be met. Partway through her plea for an injunction, the Plaintiff provides case law for libel on page twelve of her brief. From there it is unclear whether the Plaintiff is still seeking an injunction or arguing for summary judgment. The Plaintiff claims harm and discusses a potential damage to her career, but

there is no indication if that portion is seeking an injunction or summary judgment. The Plaintiff then jumps to argue that there are no genuine issues of material fact while providing no law supporting her assertion that she is entitled to judgment as a matter of law. The most confusing part is that the Plaintiff asks for a preliminary injunction, a permanent injunction, and partial summary judgment in the same paragraph she alleges that there are no genuine issues of fact. The Plaintiff's nonsensical request for an injunction should be denied because she has not met the elements for an injunction under Fifth Circuit precedent.

## LEGAL STANDARD

The Fifth Circuit has long held that to obtain an injunction, the Plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendants; and (4) that the injunction will not impair the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.,* 210 F.3d 439, 442 (5th Cir.2000).

## ARGUMENT

Given how nonsensical the Plaintiff's memorandum is, Patricia Marshall will treat this as a memorandum for an injunction. Patricia will first address how the federal rules of civil procedure and not the Mississippi rules of civil procedure apply. Patricia will then address each element as its own category as the Fifth Circuit requires four elements and not two.

### 1. *The Federal Rules of Civil Procedure and not the Mississippi Rule of Civil Procedure apply*

Given that the Plaintiff may be confused on how federal courts treat diversity cases, Patricia feels that it is necessary to address this procedural matter that should have been well-established by this point in litigation. This case was initially filed in the County Court of Hinds County, Mississippi. Because the parties were citizens of different states, Patricia remanded the case to this

Court pursuant to 28 U.S. C. § 1332. [*ECF Doc. # 1*]. Up to this point in the litigation, the Federal Rules of Civil Procedure have been followed. On page seven of her quasi-motion for injunction and summary judgment, the Plaintiff cites to Mississippi law for the standards of summary judgment and then cites Rule 56 of the Federal Rules of Civil Procedure. Then at the beginning of her argument, the Plaintiff cites to Rule 8 of the Mississippi Rules of Civil Procedure. Here, the federal rules apply.

The seminal case of *Erie R. Co. v. Tompkins* dealt with the issue of diversity jurisdiction and whether federal law, state law, federal rules, or state rules apply. The *Erie* Court clearly stated that in a diversity action, state law applies. *Erie R. Co.,* 304 U.S. 64, 822 (1938). *Erie* also held that federal courts hearing state-law claims apply federal procedural law. *Lamar Company, L.L.C. v. Mississippi Transportation Commission*, 786 Fed.Appx. 457, 460 (5th Cir. 2019); *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 894 F.2d 696, 704 (5th Cir. 2019)(reiterating that Erie broadly commanded federal diversity courts to apply state substantive law and federal procedural law). It is only when the line between substance and procedure become murky does the Court make a determination if the matter is one of substance or one of procedure. *Hannah v. Plumer,* 380 U.S. 460, 472 (1965).

Here, the line is not murky. The Plaintiff's standard of review is in reference to a motion for summary judgment. While it is unknown why the Plaintiff references Rule 8 of the Mississippi Rules of Civil Procedure, since this is not a 12(b)(6) motion, the Plaintiff's citation to Rule 8 should be disregarded. In summary, federal law of civil procedure applies in this case. The Plaintiff does not cite to any law that is binding on this Court other than the citation to Rule 56. As such, any state law or rules that deals with procedure should be disregarded.

### 2. *The Plaintiff has failed to show a substantial likelihood of success on the merits.*

Moving on to the merits of the Plaintiff's brief, the Plaintiff has failed to show that she will succeed on the merits of this case. As this Court knows by now, the Plaintiff has alleged four causes of action in this case: (1) negligent infliction of emotional distress; (2) intentional infliction of emotional distress: (3) defamation; and (4) invasion of privacy. Each cause of action contains its own elements. Rather than addressing each element of each claim and analyzing how she will succeed on all four claims, the Plaintiff simply concludes that she will win.

The Plaintiff does not even attempt an analysis. Rather, the Plaintiff just states that Patricia admitted to certain posts and posting pictures without her permission. Somehow, those admission are proof that she will win. However, the fundamental deficiency is that even if the admissions do create some type of liability, there is no indication that liability is for one or for all causes of action. Given that the Plaintiff has failed to address her four causes of action and how she will likely succeed on the merits for all four claims, she has not proven that she will succeed on the merits.

### 3. *The Plaintiff has not shown that she will suffer irreparable harm.*

The Plaintiff's harm is hypothetical. The Plaintiff has alleged that employers "will very likely" investigate her. As this Court has held "a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. *Trinity USA Operating, LLC v. Barker*, 844 F.Supp.2d 781 787-88 (S.D. Miss. 2011) (finding that possible loss of business opportunities was mere speculation and not an irreparable injury). Here the term "will very likely" is nothing more than speculation. The Plaintiff thinks something might happen, but there is nothing concrete to show that she will suffer irreparable harm.

The Plaintiff also alleges that somehow Patricia was some sort of force that prevented her from passing the bar exam. There are many factors that lead to passing or failing. There is the

possibility that the Plaintiff did not study for the exam as she should have. It could be that the Plaintiff had a mental freeze during the exam. It could also be true that the Plaintiff spent more time on Facebook, Twitter, Discord and other social media outlets trying to banter with Patricia than she did studying for the bar exam. Given that the injuries the Plaintiff claims are nothing more than speculation and conjecture, this Court should deny the Plaintiff's request.

### 4. *The Plaintiff has not provided any argument as to why the injury to the Plaintiff outweighs any harm to the Defendant.*

Whether it was by mistake or whether it was purposeful, the Plaintiff's cited the wrong standard. Plaintiff alleges harm after harm, but she never provides an analysis to this element. Given that the Plaintiff is under the wrong impression that the criteria for an injunction "are well established" by citing Second Circuit precedent, she has failed to argue and analyze the correct standard within the Fifth Circuit. Her failure to do so results in the Plaintiff waiving this argument. For these reasons as well, the Plaintiff has failed to meet this element.

### 5. *The Plaintiff has failed to provide any evidence why the injunction will not impair the public interest.*

The core of the Plaintiff's request is that she does not like what Patricia says. Their alleged political bickering and bantering has come to the point that the Plaintiff is now asking this Court to restrict Patricia's offensive speech. Restricting Patricia's speech in this case could set a dangerous precedent. On the one hand, the banter was done through private companies on social media. Patricia would submit that restricting speech should be left up to those private companies. On the other hand, Patricia would submit that the content of the speech was political in nature in a forum that is a matter of public concern. As such, it merits protection.

The seminal case of *Snyder v. Phelps*, while not on point to this specific case, does provide guidance with regard to offensive speech. *Snyder*, 562 U.S. 443, 448 (2011). In *Snyder*, the family

of the deceased marine, Matthew Snyder, were holding a funeral service for Snyder. Members of the Westboro Baptist Church picketed the funeral on public land with signs saying, "God Hates the USA/Thank God for 9/11," "America is Doomed," "Don't Pray for the USA," "Thank God for IEDs," "Thank God for Dead Soldiers," "Pope in Hell," "Priests Rape Boys," "God Hates Fags," "You're Going to Hell," and "God Hates You." *Id.* The family sued claiming emotional infliction of emotional distress because of the speech.

The *Snyder* Court in analyzed the First Amendment implications of that lawsuit. More importantly, the *Snyder* Court expounded on two categories of speech: one that is a matter of public concern, and the one that is a matter of private concern. *Id.* at 452. Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community . . . . *Id.* at 453. Here, Patricia would submit that this bickering between the parties stems from differences of political opinions. As such, it merits the highest of protections. *Id.* at 452 (speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection).

The present case is much like *Snyder*. There are many comments here that are vulgar, but they are political in nature. Take the page three of the Plaintiff's exhibit. There it references "rape babies" and "deserving a chance at life." [*ECF Doc #52-1 at 3*]. On the next page, there is a reference to "conservative women." [*ECF Doc #52-1 at 4*]. There is also a reference to police brutality against African-Americans. [*ECF Doc #52-1 at 5*]. Regardless of how offensive these posts are, the bottom line is that one deals with abortion, another deals with a different viewpoint between two people of different ideologies, and the final one dealt with speaking out on behalf of a marginalized group. While some may consider the posts to be offensive and/or insulting, but as the *Snyder* Court reiterated in public a debate we must tolerate insulting, and even outrageous,

speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment. *Snyder*, 562 U.S. at 458. To grant an injunction, merely because someone is offended should go against public policy. Therefore, the Plaintiff's request should be denied.

## CONCLUSION

For the reasons previously stated, this Court should be deny the Plaintiff's request for an injunction.

RESPECTFULLY SUBMITTED, this the 18th day of November, 2021.

> **PATRICIA MARSHALL**, **DEFENDANT**
>
> BY: */s/Christian Medina*
>     Christian Medina

OF COUNSEL:
Christian Medina (MSB#105708)
Danks, Miller & Cory
213 S. Lamar Street (39201)
Post Office Box 1759
Jackson, Mississippi 39215-1759
Telephone: 601-957-3101
Facsimile: 601-957-3160
cmedina@dmcalw.net

## CERTIFICATE OF SERVICE

I hereby certify the foregoing pleading was filed electronically with the Clerk of Court and served to all counsel of record using the CM/ECF.

This the 18th day of November, 2021.

> */s/Christian Medina*
> Christian Medina